**FILED**

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| NORMAN TOLER, ) | |
| 13698 Airport Road ) | |
| Bowling Green, MO 63334 ) | |
| Petitioner, ) | |
| ) | |
| ) | |
| v. ) | CASE NUMBER  1:05CV02505 |
| ) | JUDGE: Gladys Kessler |
| ALBERTO GONZALES, ) | DECK TYPE: Pro se General Civil |
| United States Attorney General ) | DATE STAMP: 12/~~30~~/2005 |
| 5137 Robert F. Kennedy Bldg. ) | |
| 10th St. & Constitution Ave. NW ) | |
| Washington, D.C.  20530 ) | |

<u>PETITION FOR MANDATORY INJUNCTIVE RELIEF</u>

<u>IN THE STYLE OF THE ABOLISHED WRIT OF MANDAMUS</u>

<u>AND FOR A DECLARATION OF RIGHTS</u>

COMES NOW, Norman Toler, Petitioner, <u>pro se</u>, and hereby petitions this Court for Mandatory Injunctive Relief compelling Respondent to perform his statutory and legal duties and further, Petitioner prays for a Declaration of his rights in this matter. In support of this petition, Petitioner states as follows:

I. Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to, and in accordance with, the provisions of Title 28 U.S.C. § 1331,1343,1361, 2201 and 2202.

2. Venue is proper in the judicial district of this Court in that Respondent is an officer or employee of the United States or

**RECEIVED**

DEC 1 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

an agency thereof acting in his official capacity or under the color of legal authority or agency of the United States and Respondent resides or can be found within the judicial district of this Court wherein, additionally, a substantial part of the events or omissions giving rise to this claim have occurred. 28 U.S.C. § 1391(e).

3. Venue further lies within the judicial district of this Court in that Respondent resides therein and wherein a substantial part of the events or ommissions giving rise to this claim have occurred. 28 U.S.C. § 1391(b).

## II. Statement of the Parties

4. Petitioner is and was, at all times relevant to this petition, an adult citizen of the United States who is currently incarcerated in the Missouri Department of Corrections at the Northeast Correctional Center in the County of Pike.

5. Respondent is and was, at all times relevant to this petition, the United States Attorney General and, as such, is Head of the U.S. Department of Justice and a member of the President's cabinet, whose duties include, but are not limited to, the presentation of cases in the courts on behalf of the government, the prosecution of criminal cases involving the government, the supervision of special matters involving national defense, as well as providing legal advice to the President and the heads of the executive departments.

-2-

### III. Statement of Facts

6. On June 20, 2005, Respondent sent his sworn Oath of Renunciation of Nationality of United States Citizenship, pursuant to Title 8 U.S.C. § 1481(a)(6), to Respondent through the U.S. Mail, certified, with a return receipt requested. (Exhibit A & B).

7. On June 29, 2005, Petitioner's Oath of Renunciation received by and signed for by Respondent, through his designee. (Exhibit C).

8. On or about August 9, 2005, Petitioner received correspondence from the U.S. Citizenship and Immigration Services (USCIS) indicating that Respondent had forwarded Petitioner's letter to that office. (Exhibit D).

9. In the above correspondence USCIS Information Program Specialist Janice M. Jackson, informed Petitioner that while in the U.S., "no national of the U.S. can lose nationality," and that since Petitioner was within the U.S. when he submitted his oath of Renunciation, he had "not renounced [his] citizenship." (Exhibit D).

10. Information Program Specialist Jackson also directed Petitioner to submit any further inquiries regarding Petitioner's desire to renounce his citizenship to the Department of State. (Exhibit D).

11. Petitioner then sent to letter to the Department of State, through the Bureau of Consular Affairs, restating his intent and desire to renounce his U.S. citizenship, pursuant to 8 U.S.C. 1481(a)(6) and additionally Section 349(a)(6) of the

Immigration and Nationality Act (INA), which included a copy of his verified Oath of Renunciation that was previously sent to Respondent and additionally requesting copies of the forms for Renunciation which Respondent had a legal duty to prescribe. (Exhibts E & F).

12. On November 9, 2005, Petitioner received correspondence and enclosures from the United States Department of State advising him that Section 349(a)(6) is inactive and has been since the year 1945 as the United States has not been and is not currently in a "state of war." (Exhibit G).

13. This November 9, 2005, correspondence from the Department of State further indicated that any other inquiries regarding the renunciation of nationality under Section 349(a)(6) must be addressed to Respondent as the United States Attorney General. (Exhibit G).

14. Further investigation by Petitioner has revealed that it is the practice, custom and policy of Respondent to refuse to act on his mandatory and ministerial duties, as set forth under 8 U.S.C. § 1481(a)(6) and Section 349(a)(6) of the INA, by failing to prescribe the form and designate such officer to whom a renunciation of citizenship can be made while Petitioner is in the United State during this state of war, and additionally by refusing to acknowledge that the United States is in a "state of war" as contemplated by these sections. (Exhibit H).

15. Petitioner has attached his suggestions in support of this petition and hereby fully incorporates and makes a part of herein these suggestions as though fully set forth herein.

## IV. Conclusion

WHEREFORE, Petitioner, for the foregoing reasons, including the attached and incorporated suggestions in support, respectfully prays this Court issue Mandatory Injunctive Relief compelling respondent to prescribe such form and designate such officer as is required to effectuate the provisions of Title 8 U.S.C. § 1481(a)(6) and Section 349(a)(6) of the Immigration and Nationality Act and to further Declare the rights of the parties in this case and for such further relief as this Court deems required, just and proper.

Respectfully submitted,

Norman Töler
Petitioner, pro se

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

NORMAN TOLER,                        )
          Petitioner,                )
                                     )
     v.                              )    Case No. _____
                                     )
ALBERTO GONZALES,                    )
          Respondent.                )

SUGGESTIONS IN SUPPORT OF

PETITION FOR MANDATORY INJUNCTIVE RELIEF

IN THE STYLE OF THE ABOLISHED WRIT OF MANDAMUS

AND FOR A DECLARARTION OF RIGHTS

1. The United States is in a "state of war." Accordingly,
Petitioner has submitted to Respondent his written and verified
"Oath of Renunciation of Nationality of United States
Citizenship," pursuant to Title 8 U.S.C. §1481(a)(6), which
provides for voluntary renunciation of United States Nationality
while in the United States "whenever the United States shall be
in a state of war." (Exhibit A).

2. Respondent, however, has refused to recognize
Petitioner's attempts at renunciation, stating that Title
8.U.S.C. §1481(a)(6) and the analogous INA 349(a)(6) are not
currently in effect and have been inactive since 1945. (Ex. G).
Further, Petitioner has discovered that it is the policy, custom
and usage of Respondent that "since the United States in not in a
state of war" these statutes are ineffective and that "all of the
conditions of INA 349(a)(5) must be met for a renunciation to be
effective." (Ex. H).

FILED

05 2505    DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK

3. Respondent's actions are contrary to the clear, mandatory language contained in Title U.S.C. §1481(a)(6) and INA 349(a)(6) which requires that when the requisite condition of the United States being in a "state of war" exists, these statutes shall become active. Nonetheless, Respondent is knowingly, deliberately and with malicious intent refusing to perform his duties required under these statutes. Because of Respondent's refusal to act, Petitioner seeks the power of this Court to compel Respondent to perform his mandatory obligation required by law.

4. This Court has jurisdiction over this action as Respondent, being the United States Attorney General, is a federal officer and "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Title 28 U.S.C. §1361. Further, mandamus relief is warranted as Petitioner can show that (1) he has a clear right to relief, (2) that Respondent has a clear duty to act and, (3) there is no other adequate remedy available to Petitioner. Fornaro v. James, 416 F.3d 63,69 (C.A.D.C. 2005)

I.

5. Petitioner has a clear right to relief as Title 8 U.S.C. §1481(a)(6) and INA 349(a)(6) implicate Petitioner's fundamental rights. The right of renunciation and to divest oneself of citizenship is a natural and inherent right that all people possess. Savorgnan v. U.S., 70 S.Ct. 292,295-96; 338 U.S. 491,497-98 (U.S. 1950). Specifically, Title 8 U.S.C. §1481(a)(6)

-2-

and INA 349(a)(6) provide for loss of nationality when a citizen performs the following act:

> making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not being contrary to the interests of national defense;

Clearly, Title 8 U.S.C. §1481(a)(6) and INA 349(a)(6) both contemplate the exercise of this right to divest oneself of citizenship.

6. Further, the plain and mandatory language of these statutes shows that Plaintiff has a right to the relief he seeks. Had Respondent performed his required statutory duties to prescribe forms and designate an officer, Plaintiff would have been able to renounce his citizenship. The statutes plainly state that Respondent "shall" allow such renunciations so "long as it was not contrary to the interests of national defense." The term "shall" represents a mandatory clause. Atlantic Tele-Networks, Inc. v. Inter American Development Bank, 251 F.Supp 2d 126,135 (D.D.C. 2003).

## II.

7. Respondent has a clear duty to act. Title 8 U.S.C. §1481(a)(6) and INA 349(a)(6) are predicated on the United States being in a "state of war." Respondent has a mandatory duty to act because the "predicate step" has come to pass. See Longie v. Spirit Lake Tribe, 400 F.3d 586,591 (8th Cir. 2005). However, it is Respondent's position, policy and custom that the United

-3-

States is not in a state of war. Respondent is in error.

8. This exact argument has previously been addressed by this district. In Qualls v. Rumsfeld, 357 F.Supp 2d 274 (D.D.C. 2005), the plaintiff, an enlisted serviceman, moved for an injunction challenging the Armed Forces "stop-loss" program. Specifically, Qualls argued that Congress had not declared war, so the triggers necessary to invoke the involuntary extension of his service commitment had not occurred. Id, at 283-284. However, the court took note that Congress had passed the Authorization for Use of Military Force Against Iraq Resolution of 2002 (the "October Resolution"), Pub L. No. 107-24, 116 Stat. 1498. Id. Also referencing the President's decision to send forces into Afghanistan, the court concluded that whether or not the United States was in a formally declared war, a "state of war" existed empowering the armed forces to invoke the stop-loss provisions. Id. at 284.

9. Other courts, including the Supreme Court of the United States, have also recognized that the United States is in a "state of war." See, e.g. Hamdi v. Rumsfeld, 124 S.Ct. 2633, 542 U.S. 507 (U.S. 2004)(in holding that enemy combatants must be given a meaningful opportunity to contest basis for detention commented that it has long been "clear that a state of war is not a blank check for the President when it comes to the rights of the Nations citizens." at 2650; further stating that "detention is ... a fundamental incident of waging war" and "active combat operations are ongoing..." at 2641-42). This Court should follow the holding of the Supreme Court of what constitutes a "state of

-4-

war." See <u>Korean Air Lines disaster of Sept. 1, 1983</u>, 829 F.2d
1171,1176 (C.A.D.C. 1987)(stating that binding precedent for all
is set by the Supreme Court).

10. Other, persuasive opinions include, <u>Khalidu v. Bush</u>, 355
F.supp 2d 311,330 (D.D.C. 2005)("state of war" not a blank check
for President, citing <u>Hamdi</u>); <u>Forum for Academic and Institution
Rights v. Rumsfeld</u>, 390 F.3d 219, 251 (3rd Cir. 2004)("times of
war, like the present conflicts in Afghanistan and Iraq...").

11. Additionally, President Bush has repeatedly stated to
both the courts and the public that the United States is in a
state of war. President has issued executive orders stating that
"the U.S. is at war... and [detention] is consistent with U.S.
laws and the laws of war".See <u>Rumsfeld v. Padilla</u>, 124 S.Ct
2711,2715-16 and fn. 2 (U.S. 2004). Further, President Bush said
in Baltimore on July 20, 2005 that Congress needs to renew the
Patriot Act because, "We're focused here... when you're at war,
you can't lose sight of the fat you're at war." <u>USA Today</u>, July
21, 2005 at pg. 5A. In addition, President Bush, in using his
constitutional powers to appoint Ambassador John Bolton, that the
post was "too important to leave vacant any longer, especially
during a war..." <u>USA Today</u>, August 2, 2005 at pg. 1A.

12. Lastly, Respondent has directed his agents repeatedly to
argue before the courts that the United States is indeed in a
state of war. Respondent's office has contended that the
President has the authority to detain enemy combatant citizens
captured on American soil during a time of war. See <u>Padilla ex
rel. Newman v. Bush</u>, 233 F.Supp 2d 564,587-99 (S.D.N.Y. 2002).

-5-

Further, Respondent has argued, unsuccessfully, that the power of the court to reach detained enemy combatants was curtailed when they were in military custody in time of war. See U.S. v. Moussaoui, 382 F.3d 453,463 (4th Cir. 2004).

13. While the language of the renunciation statutes shows that Respondent does have discretion as to how he will proscribe the form and as to which officer he will designate, Respondent does not possess the discretion to avoid discharging the duties Congress intended him to perform. Marathon Oil Co. v. Lujan, 937 F.2d 498,500 (10th Cir. 1991).

### III.

14. If Respondent refuses to act, Petitioner has no adequate alternative remedy. Respondent is the only official named who can carry out the duties prescribed in the renunciation statute. Under the canon of "expressio unius est exclusio alterius" it is clear that Petitioner has no where, besides this Court, to turn to seek relief.

### Conclusion

15. Petitioner, who also seek declaratory relief, has shown that he is entitled to mandatory injunctive relief. Further, Petitioner, as a United States citizen is clearly within the zone of interest of to be protected by Title 8 U.S.C. §1481(a)(6) and INA 349(a)(6) and such interest is being adversely affected by Respondent's actions. See National Credit Union Admin. v. Nat'l Bank & Trust Co., 522 U.S. 479,489; 118 S.Ct. 927 (U.S. 1998). Moreover, Petitioner can show prudential standing to bring his claim because he has petitioned Respondent to renounce his

citizenship, but Respondent has refused. Petitioner therefore has suffered an injury in fact. See Wyoming Outdoor Council v. U.S. Forest Service, 165 F.3d 43,51 (C.A.D.C. 1999).

WHEREFORE, Petitioner respectfully prays this Court GRANT his Petition for Mandatory Injunctive Relief in the Style of the Abolished Writ of Mandamus and for a Declaration of Rights.

Respectfully submitted,

Norman Töler

Petitioner, pro se

## INDEX OF EXHIBITS

Exhibit                                                                    Page

Exhibit A: Oath of Renunciation of Nationality of
           United States Citizenship......................1

Exhibit B: Certified Mail Receipt........................2

Exhibit C: Certified Return Receipt......................3

Exhibit D: Letter from U.S. Citizenship and Immigration
           Services, August 3, 2005......................4-5

Exhibit E: Letter to Bureau of Consular Affairs, U.S.
           Department of State, August 10, 2005..........6

Exhibit F: Letter to Bureau of Consular Affairs, U.S.
           Department of State, September 2, 2005........7

Exhibit G: Letter from Department of State, Nov. 3, 2005.8-12

Exhibit H: Renunciation of U.S. Citizenship Fact Sheet,
           United  States  Department  of  State........13-15

STATE OF MISSOURI ) ss
COUNTY OF PIKE )

Exhibit A, pg. 1 of 1

## OATH OF RENUNCIATION OF NATIONALITY OF UNITED STATES CITIZENSHIP

I, Norman Lee Toler, hereby express my intent to renounce my United States citizenship. In support thereof, I state that the following is true in fact and substance to the best of my belief and knowledge:

1.) My full name is Norman Lee Toler ; ss# 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 ; current age: 25. My current residence is 13698 Airport Road, 7D248, Bowling Green, Missouri, as #1108933.

2.) I, Norman Lee Toler, hereby expressely renounce any nationality of United States citizenship, as well as any allegiance, fidelity, loyalty, adherence, obedience and submission to that of the United States of America, pursuant to Ch. 8 USCA Sec. 1481(a)(6).

3.) And I further swear and offer my affirmation and declaration of allegiance, fidelity, loyalty, adherence, obedience and submission to the laws and authorities of the State of Israel, and to the State of Israel itself, and express my intent to become and claim my entitlement to citizenship of the State of Israel*; this being done pursuant to Ch. 8 USCA Sec. 1481(a)(2).

4.) I expressely offer this formal written renunciation of United States of America nationality, pursuant to Ch. 8 USCA Sec. 1481(a)(6), as the United States of America is in a state of war.

     Qualls v. Rumsfeld, 357 F.Supp. 2d 274, 284 (D.D.C. 2005);

     Rumsfeld v. Padilla, 124 S.Ct. 2711, 2715 at Fn.2 (U.S. 2004);

     Hamdi v. Rumsfeld, 124 S.Ct. 2633, 2650 (U.S. 2004).

*Pursuant to the Law of Return of 1950, as amended, of the State of Israel.

FURTHER AFFIANT SAYETH NOT

Norman Lee Toler

**05 2505**
**FILED**
DEC 3 0 2005

Signed and sworn before me this 20th day of June, 2005.

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Notary Public

DEBRA S. KELLY
Notary Public - State of Missouri
County of Ralls
My Commission Expires Mar. 12, 2007

1

Exhibit B pg. 1 of 1

**U.S. Postal Service**
**CERTIFIED MAIL    RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| Postage | $ | 37 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.42 |

Postmark Here

JUN 24 2005

Sent To: The Honorable Alberto Gonzales, United States Attorney General

Street, Apt. No.; or PO Box No.: 950 Pennsylvania Ave N.W. Room 5111

City, State, ZIP+4: Washington DC 20530

7005 0390 0004 0459 7223

PS Form 3800, June 2002

05 2505

**FILED**

DEC 3 0 2005


NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



Exhibit C₁ pg. 1 of 1

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>JUN 3 0 2005 |
| 1. Article Addressed to:<br><br>The Honorable Alberto Gonzale<br>United States Attorney General<br>950 Pennsylvania Ave, N.W<br>Room 511<br>Washington DC<br>          20530 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7005 0390 0004 0459 7223 |
| PS Form 3811, February 2004 | Domestic Return Receipt   102595-02-M-1540 |

05 2505

**FILED**

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

③

*Exhibit D, pg. 1 of 2*



U.S. Department of Homeland Security
Washington, DC 20528

**U.S. Citizenship
and Immigration
Services**

HQCIS 70/48.2-C

Mr. Norman Lee Toler, #1108933
Northeast Correctional Center
13698 Airport Road, 70248
Bowling Green, MO 63334

AUG 3 — 2005

Dear Mr. Toler:

Thank you for your correspondence dated June 23, 2005, to Mr. Alberto Gonzales, Attorney General, U.S. Department of Justice. Your letter concerning your desire to expatriate yourself from the U.S was forwarded to U.S. Citizenship and Immigration Services (USCIS), Customer Assistance Office for a response and assigned USCIS case number 280721.

U.S. nationality cannot be waived or relinquished by unilateral declaration, except as provided by law. Whether a person has lost or formally renounced his or her U.S. nationality is governed by the provisions of Section 349 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1481. Section 349 of the INA provides that a person who is a national of the U.S., whether by birth or naturalization, can lose his or her nationality by voluntarily performing the following acts:

1) Naturalizing in a foreign state after reaching the age of 18;

2) Taking an oath, or making a formal declaration of allegiance, to a foreign state, or political subdivision thereof, after reaching the age of 18;

3) Entering, or serving, in the armed forces of a foreign state, if the armed forces are engaged in hostilities against the U.S., or the individual serves as a commissioned or non-commissioned officer of such armed forces;

4) Accepting, serving in, or performing the duties of any office or employment under the government of a foreign state, or political subdivision thereof, after reaching the age of 18, if the person has acquired, or acquires, nationality of the foreign state;

05 2505

5) Formally renouncing nationality before a diplomatic or consular officer of the U.S. in a foreign state, in the manner prescribed by the Secretary of State;

6) Making, in the U.S., a formal written renunciation of nationality in the manner prescribed by the Attorney General of the United States, when the U.S. is in a state of war and the Attorney General approves the renunciation as not contrary to the interests of national security; or

**FILED**

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(4)

Mr. Norman Lee Toler
Page 2

7) Committing any act of treason against, or attempting by force to overthrow, or bearing arms against the U.S.

No national of the U.S. can lose nationality while within the U.S., except as stated in paragraphs (6) and (7) of Section 349 of the INA. See, INA § 351. However, loss of nationality shall result by the commission of other expatriating acts while within the U.S., or any of its outlying possessions, "if and when the national thereafter takes up residence outside the U.S. and its outlying possessions."

A person who is not a citizen of the U.S. is an alien under the law, and as such, is not entitled to live or work in the U.S., unless specifically authorized by law. An alien within the U.S. who is present in violation of law is subject to removal from the U.S. Furthermore, aliens within the U.S. are subject to most of the same laws and responsibilities while living within the U.S., as are citizens.

Your letter indicates that you were within the U.S. when you attempted to renounce your citizenship and that you intend to remain within the U.S. As indicated above, a national cannot lose nationality except as specifically provided for by Section 349 of the INA. Your attempt to renounce your citizenship by submitting your letter to the USCIS does not comply with Section 349 of the INA. Therefore, you have not renounced your citizenship. Until you have effectively renounced your citizenship in compliance with Section 349 of the INA, you remain a national and citizen of the U.S. and are subject to the laws thereof. More information regarding renunciation of nationality is available from the **Department of State, 2401 E Street, NW, Columbia Plaza, Washington, DC 20520** or at www.state.gov.

If you require additional assistance and/or filing instructions, we invite you to contact the USCIS National Customer Service Center at 1-800-375-5283 or visit our website at www.uscis.gov. Also, additional forms may be printed/accessed from the USCIS website. To speak with an Immigration Information Officer, you must make an appointment via the Internet at **INFOPASS** also located on our website. You must bring the printout of your INFOPASS appointment and a photo ID to the scheduled appointment.

We trust that this information is helpful.

Sincerely,

*Janice M. Jackson*

Janice M. Jackson
Information Program Specialist
Customer Assistance Office

Exhibit E, pg. 1 of 1

Norman Lee Toler, #1108933
Northeast Correctional Center
13698 Airport Rd.
Bowling Green, MO 63334

August 10, 2005

Executive Director,
Bureau of Consular Affairs
U.S. Department of State
2401 E Street, NW,
Columbia Plaza
Washington, DC 20520

RE: Renunciation of citizenship

Dear Director,

I wish to renounce my U.S. citizenship, and have been referred to your office by Janice M. Jackson, an Information Program Specialist with the U.S. Citizenship and Imigration Services. I have been assigned USCIS case number 280721.

It is my desire and intention to renounce my citizenship pursuant to Section 349 of the INA, 8 U.S.C. §1481. I have enclosed Attachment #1, which I sent to Attorney General Alberto Gonzales. As the U.S. is now in a state of war, I wish to renounce my citizenship pursuant to the provision regarding renunciatian while in the U.S. during a time of war.

Please send me any information that can assist me in making my renunciation. Further, if you determine that, in your view, I cannot invoke this specific provision, please send me any available administrative remedies so that I may exhaust them prior to taking this issue into the courts.

Thank you for your time.

Sincerely,

Norman Toler

05 2505

FILED

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



Exhibit F, pg. 1 of 1

Norman Toler,  #1108933
Northeast Correctional Center
13698 Airport Rd.
Bowling Green, MO 63334


September 2, 2005


Executive Director
Bureau of Consular Affairs
U.S. Department of State
2401 E Street, NW
Columbia Plaza
Washington, DC 20520


RE: Renunciation of Citizenship
    USCIS Case No. 280721


Dear Director,

I am writing to follow up on my letter of August 10, 2005, in which I
expressed my desire and intention to renounce my U.S. citizenship pursuant
to Section 349 of the INA and 8 U.S.C. §1481. Additionally, in the event that
your office is unwilling to allow my U.S. citizenship pursuant to those
section, I request that any available administrative remedies be sent to me so
that I may exhaust them for the purposes of litigating this action in the
federal courts.

To date, I have received no response from your office.

If, by September 16, 2005, I do not receive the proper form to renounce
my U.S. citizenship in the manner I have requested, or any administrative
grievance forms, I will take this as your statement that you are unwilling to
allow my to exercise my right to renounce my citizenship, as set forth under
federal law, and additionally, that no administrative remedies are available
to me and that the matter is exhausted for the purposes of pursuing this
matter in federal court. I await your response.

05 2505

                                    Sincerely,

**FILED**

DEC 3 0 2005

                                    Norman Toler

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



Exhibit G, pg. 1 of 5

**United States Department of State**

*Washington, D.C.  20520*
November 3, 2005

Mr. Norman Lee Toler, #1108933
Northeast Correctional Center
13698 Airport Road
Bowling Green, MO 63334

Dear Mr. Toler:

We are recently in receipt of your letter of September 2, 2005.  It appears that you are requesting more information on how to renounce your United States citizenship.  In addition to information you will find in the enclosed flyer, please read the following before deciding to renounce your U.S. citizenship.

United States citizens may relinquish their citizenship if they meet the requirements of the pertinent statutes.  Section 349(a) of the Immigration and Nationality Act (INA) governs the ability of a United States citizen to renounce formally his or her United States citizenship.  That section of law provides for the loss of nationality by performing the following act with the intent to relinquish his or her U.S. nationality:

> "(1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or
>
> (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or"
>
> "(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States <u>in a foreign state</u>, in such form as may be prescribed by the Secretary of State" (emphasis added).

A U.S. citizen applying for a foreign citizenship may lose his or her U.S. citizenship under section 349(a)(1) and section 349(a)(2) if that is the applicant's intent.  A U.S. citizen may lose his or her citizenship if he or she performs the acts specified in the statute voluntarily and with the intention of relinquishing U.S. citizenship.  However, if the U.S. citizen does not intend on relinquishing his or her U.S. citizenship when he or she is naturalized in a foreign state or takes a routine oath of allegiance, then the person will retain U.S. citizenship, unless he or she makes known an intention to relinquish U.S. citizenship.  It must be noted that a person applying for foreign citizenship must follow and meet the citizenship requirements of that foreign country.

**05 2505**

**FILED**

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

- 2 -

*Exhibit G, pg. 2 of 5*

A person wishing to renounce his or her American citizenship under section 349(a)(5) must appear in person and sign an oath of renunciation before a U.S. consular or diplomatic officer abroad (normally at a U.S. Embassy or Consulate). Renunciations that do not meet the condition described above have no legal effect. In light of the provisions of section 349(a)(5), Americans cannot effectively renounce their citizenship by mail, through an agent, or while in the United States. In fact, U.S. courts have held improper renunciations to be ineffective on a variety of grounds. While there is a parallel section of the law regarding relinquishing citizenship within the United States during a state of war, it has been inactive since 1945.

Persons intending to renounce their American citizenship should be aware that, unless they already possess a foreign nationality, they could become stateless without protection of any government. They may also have difficulty traveling as they may not be entitled to a passport from any country and they would be required to obtain a visa to travel to the United States. If found ineligible for a visa to the U.S., a renunciant, under certain circumstances, could be permanently barred from entering the United States. Nonetheless, renunciation of American citizenship may not prevent a foreign country from deporting that individual back to the United States in some non-citizen status.

Also, persons who are renouncing their United States citizenship should be aware that the fact that a person has renounced their U.S. nationality may have no effect whatsoever on their U.S. tax or military service obligations. In addition, the act of renouncing U.S. citizenship will not allow them to escape possible prosecution for crimes which they may have committed in the United States, or escape the repayment of financial obligations previously incurred in the United States. Finally, those contemplating a renunciation of U.S. citizenship should understand that the act is irrevocable, except as provided in section 351 of the INA, and cannot be canceled or set aside absent successful administrative or judicial appeal (Section 351 of the INA requires U.S. citizens to renounce their U.S. citizenship outside the United States, but also provides that an applicant who renounced his or her U.S. citizenship before the age of eighteen can have that citizenship reinstated under certain conditions).

An official loss of citizenship only occurs when a Certificate of Loss of Nationality is issued. The certificate may only be issued by the Department of State, after a close review in which it is determined whether the person truly wishes to relinquish his or her citizenship pursuant to Section 349(a) of the INA.

Persons who are considering renouncing U.S. citizenship should carefully review the enclosed information. We hope that this information will be helpful to you.

Sincerely,

Office of Policy Review and Interagency Liaison
Bureau of Consular Affairs

Enclosures: *Flyer on Renunciation of United States Citizenship By Persons Claiming A Right Of Residence In The United States, Contact information for Israeli Consulate*

Exhibit G, pg. 3 of 5

Consulate General of Israel to the Midwest
111 East Wacker Drive
Suite 1308
Chicago, IL 60601
Tel: (312) 297-4800
Email: contactus@chicago.mfa.gov.il

Embassy of Israel
3514 International Dr. N.W.
Washington, DC 20008
Tel.: (202) 364-5557

Exhibit G, 4 of 5

# RENUNCIATION OF U.S. CITIZENSHIP BY PERSONS CLAIMING A RIGHT OF RESIDENCE IN THE UNITED STATES

Section 349(a) of the Immigration and Nationality Act [8 U.S.C. 1481] governs how a U.S. citizen shall lose U.S. nationality. Section 349(a) states:

> A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality:

> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

> (6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

Renunciation is the most unequivocal way in which a person can manifest an intention to relinquish U.S. citizenship. Those contemplating a renunciation of U.S. citizenship should understand that renunciation is irrevocable, except as provided in Section 351 of the Immigration and Nationality Act, and cannot be cancelled or set aside absent successful administrative or judicial appeal. Consequently, renunciation of U.S. citizenship is not a step to be taken lightly. Because renunciation is a serious matter to be undertaken soberly and advisedly, persons contemplating renunciation are advised by U.S. consular officers to consider the matter carefully and, if they chose to proceed, to come back to the U.S. embassy or consulate after a period of reflection.

In accordance with Section 358 of the Immigration and Nationality Act, while persons seeking to renounce U.S. citizenship submit the necessary documentation to a U.S. consular officer at a U.S. Foreign Service post abroad, the decision whether to approve the renunciation is made by the Department of State in Washington, D.C. Accordingly, unless and until a certificate of loss of nationality is approved by the U.S. Department of State, the oath of renunciation, even though signed by the individual is not/not legally effective in terminating the person's U.S. citizenship.

In order for a renunciation under Section 349(a)(5) to be effective, all of the conditions of the statute must be met. In other words, a person wishing to renounce American citizenship must appear in person and sign an oath of renunciation before a U.S. consular or diplomatic officer abroad, generally at an American Embassy or Consulate. Moreover, Section 349(b) of the Act provides that:

> Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this of any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

In addition, please be aware that:

Exhibit G, pg. 5 of 5

**The U.S. Department of State has concluded that the intention to relinquish U.S. nationality required for purposes of finding loss of nationality for the purposes of Section 349(a) of the INA does not exist where a renunciant plans or claims a right to continue to reside in the United States, unless the renunciant demonstrates that residence will be as an alien documented properly under U.S. law.**

Renunciations which are not in the form prescribed by the Secretary of State have no legal effect. Because of the way in which Section 349(a)(5) is written and interpreted, Americans cannot effectively renounce their citizenship by mail, through an agent, or while in the United States. Section 349(a)(6) provides for renunciation of United States citizenship under certain circumstances in the United States when the United States is in a state of war. Such a state does not currently exist, and has not existed since the end of World War II. Questions concerning renunciation of American citizenship under Section 349(a)(6) should be addressed to the Attorney General.

Persons who contemplate renunciation of U.S. nationality should be aware that, unless they already possess a foreign nationality or are assured of acquiring another nationality shortly after completing their renunciation, severe hardship to them could result. In the absence of a second nationality, those individuals would become stateless. As stateless persons, they would not be entitled to the protection of any government. They might also find it difficult or impossible to travel, as they would probably not be entitled to a passport from any country. Further, a person who has renounced U.S. nationality will be required to apply for a visa to travel to the United States, just as other aliens do. If found ineligible for a visa, a renunciant could be permanently barred from the United States. Renunciation of American citizenship does not necessarily prevent a former citizen's deportation from a foreign country to the United States.

Persons considering renunciation should also be aware that the fact that they have renounced U.S. nationality may have no effect whatsoever on their U.S. tax or military service obligations. Nor will it allow them to escape possible prosecution for crimes which they may have committed in the United States, or repayment of financial obligations previously incurred in the United States. Questions about these matters should be directed to the government agency concerned.

Those persons who, after careful consideration of the contents of this letter and its enclosures, desire to renounce U.S. citizenship may contact the U.S. embassy to make an appointment, bearing in mind that they will be asked to demonstrate proof of foreign residence, or failing that, evidence that they intend to enter the United States as an alien with documentation to that effect. Moreover, a person in possession of a U.S. passport will be asked to submit that passport to the U.S. consular officer for cancellation. If the certificate of loss of nationality is approved by the U.S. Department of State, the individual's name will be entered in the Department's name check system and they will be ineligible for U.S. passports in the future.

As previously stated, persons contemplating renunciation of U.S. citizenship are reminded that renunciation is irrevocable, except as provided in Section 351 of the Immigration and Nationality Act, and cannot be cancelled or set aside absent successful administrative or judicial appeal.

If you have any questions, contact a U.S. consular officer at the U.S. embassy or the Department of State (CA/OCS/PRI) at 202-736-9110.





United States Department of State

Exhibit thing. 1 of 3

*Washington, D.C.  20520*

# RENUNCIATION OF U.S. CITIZENSHIP

## A. THE IMMIGRATION & NATIONALITY ACT

Section 349(a)(5) of the Immigration and Nationality Act (INA) is the section of law that governs the ability of a United States citizen to renounce his or her U.S. citizenship. That section of law provides for the loss of nationality by voluntarily performing the following act with the intent to relinquish his or her U.S. nationality:

> "(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States *in a foreign state*, in such form as may be prescribed by the Secretary of State" (emphasis added).

## B. ELEMENTS OF RENUNCIATION

A person wishing to renounce his or her U.S. citizenship must voluntarily and with intent to relinquish U.S. citizenship:

(1)    appear in person before a U.S. consular or diplomatic officer,
(2)    in a foreign country (normally at a U.S. Embassy or Consulate); and
(3)    sign an oath of renunciation

Renunciations that do not meet the conditions described above have no legal effect. Because of the provisions of section 349(a)(5), Americans cannot effectively renounce their citizenship by mail, through an agent, or while in the United States. In fact, U.S. courts have held certain attempts to renounce U.S. citizenship to be ineffective on a variety of grounds, as discussed below.

## C. REQUIREMENT - RENOUNCE ALL RIGHTS AND PRIVILEGES

In the recent case of Colon v. U.S. Department of State, 2 F.Supp.2d 43 (1998), plaintiff was a United States citizen and resident of Puerto Rico, who executed an oath of renunciation before a consular officer at the U.S. Embassy in Santo Domingo. The U.S. District Court for the District of Columbia rejected Colon's petition for a writ of mandamus directing the Secretary of State to approve a Certificate of Loss of Nationality in the case because the plaintiff wanted to retain one of the primary benefits of U.S. citizenship while claiming he was not a U.S. citizen. The Court described the plaintiff as a person, "claiming to renounce all rights and privileges of United States citizenship, [while] Plaintiff wants to continue to exercise one of the fundamental rights of citizenship, namely to travel freely throughout the world and when he wants to, return

05 2505

**FILED**

DEC. 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit H,
pg 2 of 3

and reside in the United States." See also <u>Jose Fufi Santori v. United States of America</u>, 1994 U.S. App. LEXIS 16299 (1994) for a similar case.

A person who wants to renounce U.S. citizenship cannot decide to retain some of the privileges of citizenship, as this would be logically inconsistent with the concept of citizenship. Thus, such a person can be said to lack a full understanding of renouncing citizenship and/or lack the necessary intent to renounce citizenship, and the Department of State will not approve a loss of citizenship in such instances.

### D. DUAL NATIONALITY / STATELESSNESS

Persons intending to renounce U.S. citizenship should be aware that, unless they already possess a foreign nationality, they may be rendered stateless and, thus, lack the protection of any government. They may also have difficulty traveling as they may not be entitled to a passport from any country. Even if they were not stateless, they would still be required to obtain a visa to travel to the United States, or show that they are eligible for admission pursuant to the terms of the Visa Waiver Pilot Program (VWPP). If found ineligible for a visa or the VWPP to come to the U.S., a renunciant, under certain circumstances, could be permanently barred from entering the United States. Nonetheless, renunciation of U.S. citizenship may not prevent a foreign country from deporting that individual back to the United States in some non-citizen status.

### E. TAX & MILITARY OBLIGATIONS / NO ESCAPE FROM PROSECUTION

Also, persons who wish to renounce U.S. citizenship should also be aware that the fact that a person has renounced U.S. citizenship may have no effect whatsoever on his or her U.S. tax or military service obligations (contact the Internal Revenue Service or U.S. Selective Service for more information). In addition, the act of renouncing U.S. citizenship will not allow persons to avoid possible prosecution for crimes which they may have committed in the United States, or escape the repayment of financial obligations previously incurred in the United States.

Exhibit H, pg 3 of 3

## F. RENUNCIATION FOR MINOR CHILDREN

Parents cannot renounce U.S. citizenship on behalf of their minor children. Before an oath of renunciation will be administered under Section 349(a)(5) of the INA, a person under the age of eighteen must convince a U.S. diplomatic or consular officer that he/she fully understands the nature and consequences of the oath of renunciation and is voluntarily seeking to renounce his/her U.S. citizenship. United States common law establishes an arbitrary limit of age fourteen under which a child's understanding must be established by substantial evidence.

## G. IRREVOCABILITY OF RENUNCIATION

Finally, those contemplating a renunciation of U.S. citizenship should understand that the act is irrevocable, except as provided in section 351 of the INA, and cannot be canceled or set aside absent successful administrative or judicial appeal. (Section 351(b) of the INA provides that an applicant who renounced his or her U.S. citizenship before the age of eighteen can have that citizenship reinstated if he or she makes that desire known to the Department of State within six months after attaining the age of eighteen. See also Title 22, Code of Federal Regulations, section 50.20).

Renunciation is the most unequivocal way in which a person can manifest an intention to relinquish U.S. citizenship. Please consider the effects of renouncing U.S. citizenship, described above, before taking this serious and irrevocable action. If you have any further questions regarding this matter, please contact the Director, Office of Policy Review & Interagency Liaison, Bureau of Consular Affairs, U.S. Department of State, Washington, DC 20520.

---

[1] Section 349(a)(6) of the INA allows citizens to relinquish their United States citizenship within the United States but only when the country is in a state of war:

> "(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense;" (emphasis added)

Since the United States is not in a state of war, all of the conditions of INA 349(a)(6) must be met for a renunciation to be effective. (questions regarding section 349(a)(6) of the INA should be addressed to the U.S. Department of Justice).