IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORMAN TÖLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | No. 05-2505 (GK) |
| ) | |
| ALBERTO GONZALES, ) | |
| UNITED STATES ATTORNEY GENERAL, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE AND SUGGESTION S IN OPPOSITION
## TO DEFENDANTS MOTION TO DISMISS

***COMES NOW*** the Plaintiff, Norman Töler, and for his response to Defendant's motion to dismiss, states as follows:

### I. Standard of Review

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); ***Kowal v. MCI Communications Corp.***, 16 F.3d 1271, 1276 (D.C.Cir.1994). The Court accepts as true all of the factual allegations set forth in the complaint. ***Doe v. United States Dept. of Justice***, 753 F.2d 1092, 1102 (D.C.Cir.1985). Further, the Court should construe the complaint liberally in favor of the plaintiff and grant him the benefit of all inferences that can be derived from the facts alleged. ***Schuler v. United States***, 617 F.2d 605, 608 (D.C.Cir.1979).

**RECEIVED**

APR 1 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## II. Argument

As Attorney General Gonzales correctly points out, the granting of a writ of mandamus is a drastic remedy to be used only in extraordinary situations. (Defendant's Motion to Dismiss in Response to Order to Show Cause, "Motion to Dismiss", at page 2). However, war is an 'extraordinary situation.' *Fuentes v. Shevin,* 92 S.Ct. 1983,1999-2000 407 U.S. 67, (U.S.Fla. 1972).

Attorney General Gonzales first complains that there is a potential conflict of interest that could exist between the branches of the government if the Court grants Plaintiff the remedy he is requesting. (Motion to Dismiss, 3). Defendant's concerns are misplaced.

Certainly, while Congress must bear the ultimate responsibility for remedying problems in the administration of federal programs, that does not mean that a judicial role is precluded where the statutory mandate is not being followed. The fact, moreover, that the courts seek to remedy the violation of a federal statute in no way precludes Congress from providing additional or different relief, or from clarifying or modifying the statute if the judicial interpretation is not approved. Finally, it is clear that no violence to the principle of the separation of powers arises from judicial efforts to enforce a congressional mandate. *Cobell v. Norton,* 283 F.Supp.2d 66, 105 at fn 23 (D.D.C. 2003); citing *Caswell v. Califano*, 583 F.2d 9, 15, 16 (1st Cir.1978).

Next, Attorney General Gonzales claims that Plaintiff has failed to satisfy his burden requiring Plaintiff show (1) that he has a clear legal right to the relief sought and (2) that Defendant has a clear duty to act. (Motion to Dismiss, 3). Specifically, Defendant contends that Plaintiff has no remedy as the renunciation statute at issue had the particular and, by implication from his argument, limited purpose of detaining U.S. citizens of Japanese origin in 1944. (Motion to Dismiss, 3-4). Attorney General Gonzales contends that since the regulations ceased

to have effect at the end of WWII, Plaintiff cannot avail himself of the procedure contained therein. (Motion to Dismiss, 4).

Apparently, it is true that the Attorney General in office at that time recognized that there was no constitutional means by which American citizens, not charged with crime and not under martial law could be detained by administrative, military or civil officials or upon a mere administrative determination of loyalty. The Attorney General was thus required to exercise his ingenuity to accomplish the continued detention of the citizen group at Tule Lake Camp without doing violence to the Constitution. His recommendation for the enactment of subsection (i) was his answer. For by virtue of this legislation, if renunciations of American citizenship could be obtained from those in Tule Lake, it was though they could then be detained as alien enemies without doing violence to our traditional constitutional safeguards. *Tadayasu Abo v. Clark*, 77 F.Supp. 806,809 (N.D.Cal. 1948).

However, Attorney General Gonzales' assertion that the renunciation statute is no longer effective is belied by his own observations. As Defendant notes, in 1952 Congress adopted a statutory provision virtually identical to the 1944 version, which is currently codified at 8 U.S.C. § 1481 (a)(6). (Motion to Dismiss, 4 at fn 1). Attorney General Gonzales would have the Court believe that Congress enacted a pointless law that has no actual effect, nearly 7 years after WWII was over. However, Congress cannot be presumed to do a futile thing. *Halverson v. Slate*, 129 F.3d 180,185 (C.A.D.C. 1997); see also *Benavides v. DEA*, 968 F.2d 1243, 1248 (D.C.Cir.1992) (rejecting Attorney General's interpretation of statutory provision because it would make provision "either superfluous or meaningless").

Not only is the statute active, Plaintiff has a clear legal right to the relief afforded him under 8 U.S.C. § 1481 (a)(6). Under the American doctrine of citizenship, the right of

3

expatriation is inherent. *Podea v. Marshall*, 83 F.Supp. 216, 219 (D.C.N.Y.1949) (citing statute R.S. § 1999 (Comp. St. § 3955 (8 U.S.C.A.§ 800) which was later transferred to 8 U.S.C. § 1481 (a)(6)) (reversed on other grounds, 179 F.2d 306). The renunciation statutes indicate that a citizen can throw off his allegiance to this country if he desires, especially in view of R.S. § 1999, set out as a note 8 U.S.C. § 1481 (a)(6) which provided:

> "Whereas the right of expatriation is a natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness; and whereas in the recognition of this principle this Government has freely received emigrants from all nations, and invested them with the rights of citizenship; and whereas it is claimed that such American citizens, with their descendants, are subjects of foreign states, owing, allegiance to the governments thereof; and whereas it is necessary to the maintenance of public peace that this claim of foreign allegiance should be promptly and finally disavowed: Therefore any declaration, instruction, opinion, order, or decision of any officer of the United States which denies, restricts, impairs, or questions the right of expatriation, is declared inconsistent with the fundamental principles of the Republic."

*U.S. v. Howe*, 231 F. 546, 547 (D.C.N.Y.1916); see also *U.S. v. Husband*, 6 F.2d 957, 958 (C.C.A.N.Y.1925); *Ex parte Griffin*, 237 F. 445, 448 (D.C.N.Y.1916).

Additionally, Attorney General Gonzales has a clear duty to act. Title 8 U.S.C. § 1481 (a)(6) provides that a citizen can expatriate by:

> "making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney

General shall approve such renunciation as not contrary to the interests of national defense..."

Attorney General Gonzales argues the position that the United States is not in a "state of war." (Motion to Dismiss, 5). Defendant contends that § 1481(a)(6) is therefore presently inoperative and the Attorney General is thereby justified in not prescribing procedures for such renunciations. (Motion to Dismiss, 5; citing *Koos v. Holm,* 204 F.Supp.2d 1099, 1108 (W.D.Tenn. 2002).

However, the situation has changed from that faced by the court in *Koos*. The United States is now in a state of war; an allegation which for the purpose of reviewing a motion to dismiss must be accepted as true. *National Treasury Employees Union v. U.S.,* 101 F.3d 1423, 1430 (C.A.D.C. 1996). To the extent that being in a "state of war" may be a question of law, it is one which has already decided in Plaintiff's favor.

We are in a "state of war" even if the United States has not formally declared a war. *Qualls v. Rumsfeld*, 357 F.Supp.2d 274,284 (D.D.C. 2005). The Supreme Court has recognized this, further declaring that a "state of war" is not a blank check for the President. *Hamdi v. Rumsfeld* 124 S.Ct. 2633; 542 U.S. 507 (U.S. 2004). The Attorney General Gonzales himself has argued, in a cases eerily reminiscent of Tule Lake Camp detentions, that the United States is in a "time of war" *U.S. v. Moussaoui,* 382 F.3d 453,463 (C.A.4 (Va.) 2004); *Padilla ex rel. Newman v. Bush,* 233 F.Supp.2d 564,587-99 (S.D.N.Y. 2002).

As the United States is in a "state of war," the prerequisites for requiring Attorney General Alberto Gonzales to act on 8 U.S.C. § 1481 (a)(6) have been satisfied and the failure of Defendant to proscribe the necessary procedures for renunciation warrants mandamus relief. See *Longie v. Spirit Lake Tribe,* 400 F.3d 586, 598 (C.A.8 (N.D.) 2005).

5

Attorney General Gonzales freely admits that he has never promulgated regulations to implement the provisions of 8 U.S.C. § 1481 (a)(6) and, further, that he is not now choosing to exercise what he contends is his discretion. (Motion to Dismiss, 4 at fn 1; 5). However, Defendant mistakes the difference between his mandatory duty to act with his discretion he possesses as to the manner in which he will carry out his duty. ). Title 8 U.S.C. § 1481 (a)(6) is mandatory as to the object to be achieved, but it leaves the Attorney General a great deal of discretion in deciding how to achieve it.

When an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be. *Norton v. Southern Utah Wilderness Alliance,* 124 S.Ct. 2373, 2380 542 U.S. 55, (U.S. 2004). Plaintiff's action can proceed as he has asserted that an agency, the Office of the Attorney General, has failed to take a discrete agency action that it is required to take. *Norton,* at 2379.

Finally, 5 U.S.C.A. § 706 allows the Court to (1) compel agency action unlawfully withheld or unreasonably delayed; or (2) hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Norton,* at 2380.

Plaintiff did not explicitly refer to § 706 in his initial Petition for Mandatory Injunctive Relief. However, Plaintiff is proceeding *pro se*, and the Court has an obligation to construe pro se filings liberally. *U.S. v. Byfield,* 391 F.3d 277, 281 (C.A.D.C. 2004). Further, Rule 8(f) instructs that "[a]ll pleadings shall be so construed as to do substantial justice." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (C.A.D.C. 2000).

Attorney General Alberto Gonzales is wrong that he can flagrantly disregard his clear duty to act. To the extent that he has any discretion under 8 U.S.C. § 1481 (a)(6), he abuses that discretion by failing and refusing to act on that discretion. See e.g, *Estate of Shapiro v. C.I.R*, 111 F.3d 1010, 1018 (C.A.2 1997). In any event, Attorney General Alberto Gonzales does not possess the discretion to avoid discharging the duties that Congress intended him to perform. *Marathon Oil Co. v. Lujan,* 937 F.2d 498, 500 (C.A.10 (Colo.) 1991)

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Plaintiff prays that the Court deny Defendant's motions to dismiss, and for such further relief deemed just in the circumstances.

Respectfully submitted,

Norman Töler
13698 Airport Rd.
Bowling Green, Mo. 63334

Plaintiff, pro se

### Certificate of Service

I hereby certify that a true copy of the above motion was mailed to the defendants c/o the Office of the United States Attorney General. Washington D.C. by first class mail, postage prepaid, this 5th day of April 2006.

Norman Toler