UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORMAN TOLER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2505 (GK) |
| | ) |
| ALBERTO GONZALES, UNITED STATES | ) |
| ATTORNEY GENERAL | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS**

Defendant, United States Attorney General Alberto Gonzales, respectfully submits the following reply to Plaintiff's opposition and in further support of Defendant's motion to dismiss. Plaintiff has failed to cite any authority or make any argument that establishes his "clear and indisputable" right to the issuance of a writ of mandamus. See 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980). Thus, Defendant's motion should be granted.

Plaintiff, a United States citizen currently incarcerated by the Missouri Department of Corrections, claims that Section 349(a)(6) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1481(a)(6), imposes on Defendant "a clear duty to" effectuate Plaintiff's proffered renunciation of his United States citizenship while Plaintiff resides in this country at the Northeast Correctional Center in Bowling Green, Missouri. (R.11 at 4-5).[1]  Plaintiff bases this claim on allegations that the United States is in a "state of war." (R.11 at 5). Plaintiff has misapprehended the thrust of Defendant's argument and the statute at issue.

---

[1] An "R." followed by a number describes a document by reference to its placement in the Court's docket.

Specifically, the merits of Plaintiff's claim do not rest on whether or not the United States is currently at war, and Defendant has not and has no basis for asking this Court to make a finding regarding this issue. Indeed, the only relevance to the country's political state is that Defendant is only authorized to act under 8 U.S.C. § 1481(a)(6) if the United States is at war. What dooms Plaintiff's claim, however, is that, even in a "state of war," Defendant's action or lack of action under this statute is discretionary and cannot be compelled by this Court. See 13th Regional, 654 F.2d at 760 (writ of mandamus will issue "only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it").

Plaintiff attempts to side-step the clear discretionary language of the statute, 8 U.S.C. § 1481(a)(6) (a person loses his nationality by "making in the United States a formal written renunciation of nationality in such form as may be prescribed by . . .the Attorney General"), by alleging that imbibing Defendant with the choice not to act would make Congress' promulgation of the statute "futile." (R.11 at 3). Plaintiff also claims that the statute confers discretion on the Defendant only as to the manner of action, as opposed to the requirement to act at all. (R.11 at 6). Plaintiff is wrong on both points.

First, 8 U.S.C. § 1481(a)(6) permits Defendant to accept a renunciation of citizenship from a United States national within the country's borders when the country is in a "state of war" and Defendant finds that such renunciation is not contrary to the "interests of national defense." The conferment of this power, despite its decidedly checkered history, see Tadayasu v. Clark, 77 F.Supp. 806, 809-10 (N.D.Cal. 1948), reversed in part on other grounds, 186 F.2d 766 (9th Cir.), cert. denied, 342 U.S. 832 (1951) (provision enacted to allow government to lawfully detain U.S.

citizens of Japanese descent during WWII), is not insignificant or unsubstantial, see Costello v. United States, 365 U.S. 265, 269 (1961) (United States citizenship is a precious right and its loss is often attended by dire consequences). Moreover, it is not rendered "superfluous or meaningless," see Benavides v. DEA, 968 F.2d 1243, 1248 (D.C. Cir. 1992) (cited by Plaintiff), because the Attorney General has consciously decided not to exercise the power accorded him at this time, and therefore, has promulgated no implementing regulations. See Koos v. Hom, 204 F. Supp. 2d 1099, 1108 (W.D.Tenn. 2002) ("§ 1481(a)(6) is presently inoperative") (citing United States Citizenship and Naturalization Handbook, § 15:13). See also Savorgnan v. United States, 338 U.S. 491, 498 (1950) (courts hesitate to recognize expatriation of citizens, even by foreign naturalization, without the express consent of our Government).[2]

Plaintiff's second argument, that Defendant has discretion merely in the manner of his actions, is likewise unpersuasive. The plain language of the statute permits, but does not require Defendant to set forth a methodology by which United States nationals may renounce their citizenship within the country. See 8 U.S.C. § 1481(a)(6) ("...in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General . . ."). A district court considering an identical claim, that of a prisoner seeking to renounce his citizenship pursuant to

---

[2] The more commonly invoked statutory provision of expatriation is found at § 1481(a)(5), which requires a "formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State . . ." 8 U.S.C. § 1481 (a)(5) (emphasis added). The Secretary of State has implemented this provision by setting forth the manner and form of the renunciation in a regulation. See 8 C.F.R. § 50.50. This method would be an option for Plaintiff once he is released from prison. See Koos, 204 F.Supp.2d at 1108. Moreover, the fact that this option is not available to Plaintiff now, because of his incarceration, is not relevant and indicates no improper abrogation of rights. See Hewitt v. Helms, 459 U.S. 460, 467 (1983) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (cited in Koos, 204 F.Supp.2d at 1108).

this statute, upheld the propriety of Defendant's inaction. See Koos, 204 F.Supp.2d at 1108. Moreover, the statute contemplates, and the Plaintiff has failed to address, that the Attorney General has the discretion to determine whether, even when all other elements have been met, a renunciation is or is not contrary to "the interests of national defense." 8 U.S.C. § 1481(a)(6).

Thus, it is abundantly clear, that any action by the Attorney General pursuant 8 U.S.C. § 1481(a)(6) is discretionary, not ministerial, and mandamus is inappropriate in this case.

Plaintiff makes mention of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq., for the first time in his opposition to Defendant's motion to dismiss. (R.11 at 6). However, Plaintiff's claim fares no better under this rubric. Specifically, the APA does not provide the Court with jurisdiction in cases like this one where agency action (or inaction) is committed to agency discretion by law. See 5 U.S.C. § 701(a)(2); Webster v. Doe, 486 U.S. 592, 599 (1988); Heckler v. Chaney, 470 U.S. 821, 830 (1985) (statute provided FDA with unfettered discretion regarding how and when to bring enforcement actions; thus, no judicial review under APA); Citizens to Protect Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (courts may not review agency action under APA if statute is "drawn in such broad terms that in a given case there is no law to apply").

As fully discussed above, the agency decision-making encompassed by 8 U.S.C. § 1481(a)(6) indicates unfettered discretion. Indeed, of all the statutory phrases considered by the courts under the "no law to apply" exception to the APA, perhaps none "fairly exudes deference" more than the phrase "the national interest." Webster, 486 U.S. at 600 (court had no basis to review CIA Director's termination of employee under § 102(c) of the NSA short of cross-examining him concerning his views regarding the Nation's security, thus APA review could not

4

be had). Likewise, even if Defendant were to set forth a procedure by which Plaintiff could renounce his citizenship, and Plaintiff followed that procedure, Defendant has the unfettered and unreviewable discretion to evaluate the impact of that renunciation on the "interests of the national defense." Thus, this Court has no jurisdiction to review Defendant's inaction in this case under the APA.

## CONCLUSION

For the reasons stated above, Plaintiff's petition for a Writ of Mandamus is not appropriate, and the Writ should not issue. The Court should dismiss this case.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
RUDOLPH C. CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
KATHLEEN KONOPKA, D.C. BAR # 495257
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C. 20530
(202) 616-5309

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April 2006, the foregoing *Defendant's Reply to Plaintiff's Opposition to Motion To Dismiss* was served on *Pro Se* Plaintiff by mail, postage prepaid, addressed as follows:

**Norman Toler
No. 1108933
Northeast Correctional Center
13698 Airport Road
Bowling Green MO 63334**

_____
KATHLEEN KONOPKA
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 616-5309